NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JOSEPH R. CLEGG, PETITIONER, v. MOTOR FINANCE
CORP. AND/OR INTERSTATE INSURANCE CO., RE-
SPONDENTS.

Decided October 19, 1942.

For the petitioner, *William V. Breslin*.

For the respondents, *Cox & Walburg* (*Arthur F. Mead*,
of counsel).

\*　　\*　　\*　　\*　　\*　　\*　　\*

The issue presented here for determination is whether the
petitioner on the day in question sustained an accident aris-
ing out of and in the course of his employment, and if so,
whether he suffered any temporary or permanent disability
as a result of such accident.

Essentially, the facts developed in the evidence are as
follows: The petitioner on the day of the accident and for
some time prior thereto, was in the employ of the respondents
Interstate Insurance Co. whose office was located in Newark,
in the capacity of adjuster. Among other duties, it was
necessary for him to effect the repossession of automobiles.
He had no regular working hours, but was given assignments

each day which he would carry over from day to day. It was not unusual for him to work varying hours of the day or night in the performance of these assignments in which he required the use of his automobile. Several days prior to the alleged accident, he was given an assignment to repossess the automobile of one Conklin who was the manager of a grocery store in Nanuet, New York, and who resided in New City, New York. On the day of the accident, a Saturday, the petitioner in furtherance of this assignment, attempted to contact Conklin at Nanuet by telephone. Failing in this, he left Newark with his car to go to Nanuet to repossess the car of Conklin. Arriving in Nanuet in the afternoon, petitioner failed to find Conklin's car in the vicinity of the store and although he made no effort to contact Conklin personally at his store, he tried to reach Conklin by telephone at his home in New City but was unsuccessful. Thereupon, the petitioner left New City in his auto to go to Newburgh, New York, where his wife was visiting some friiends. The petitioner spent the remainder of the afternoon and early evening visiting with his wife in Newburgh. Petitioner testified that about eleven o'clock that evening, he left Newburgh in his car to go to New City to see Conklin and, if possible, repossess his automobile. It was while on Route 9-W on the outskirts of New Windsor, New York, and between eleven P. M. and midnight, that he met with an automobile accident as a result of which he sustained a fractured leg and was hospitalized for several weeks. From the road map in evidence, it would appear that New City is about five miles north of Nanuet, that Newburgh is about thirty miles north of New City and that New Windsor is about three miles south of Newburgh.

The respondent contends that the petitioner at the time of the accident was on his way to his home in Newark; further, that when the petitioner went from New City to Newburgh, it constituted a deviation from his route and from the scope of his employment, and that therefore the petitioner at the time and place in question, did not sustain an accident which arose out of and in the course of his employment with

respondent. The respondent, however, presented no affirmative proof in support of its contentions.

The burden of proof rests upon the petitioner to prove by a fair preponderance of the credible evidence the essential allegations of his petition in order to entitle him to an award. He is charged with the duty of furnishing evidence from which the inference can be legitimately drawn that the injury alleged was caused by an accident arising out of and in the course of his employment. *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458.

From a careful review and consideration of the evidence and after hearing the testimony of the petitioner and observing his demeanor on the stand, I am constrained to believe that the petitioner is worthy of credence and am satisfied that the accident in which he was involved arose not only out of but in the course of his employment as well. The words "out of" relate to the origin or cause of the accident; the words "in the course of" relate to the time, place and circumstances under which it occurs. An accident arises "in the course of" his employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. For an accident to arise "out of" the employment, it must be of such a nature the risk of which might have been contemplated by a reasonable person when entering the employment and as incidental to it. The risk is incidental to the employment when it belongs to or is connected with what an employee is required to do in the performance of his services.

While it is true as a general rule that an accident occurring to an employee away from his employer's premises, while going to or returning from work does not arise out of and in the course of the employment, yet the case at bar comes clearly within exception "(2)" of the group of exceptions to this general rule so clearly enunciated in the learned opinion of Deputy Commissioner John J. Stahl in *Rafferty* v. *Dairymen's League Co-operative Association, Inc.,* 16 *N. J. Mis. R.* 363; 200 *Atl. Rep.* 493, as follows:

"(2) *Where the use of an automobile or other form of vehicle is required in the performance of the contract of service.* The law is well settled in this state that an employee, authorized or required to use an automobile by his employer in the fulfilling of his contract of service, is still within the course of his employment while driving from the point of last call to his home where the car is garaged. *Demarest et al.* v. *Guild et al.,* 114 *N. J. L.* 472; 176 *Atl. Rep.* 558; *Sanford* v. *Chas. H. Totty Co.,* 110 *N. J. L.* 262; 164 *Atl. Rep.* 458; *Auer* v. *Sinclair Refining Co.,* 103 *N. J. L.* 372; 137 *Atl. Rep.* 555; 54 *A. L. R.* 623."

The respondent apparently regards the unusual hour at which the accident happened and the fact that the petitioner upon not finding the car of Conklin in Nanuet failed to call at the store of Conklin, as justification for its contention that the accident to the petitioner did not arise out of and in the course of his employment. The testimony of the petitioner, however, is clear and convincing and remains uncontroverted on the record, viz.: that he had occasion to repossess Conklin's car on a prior occasion, during the course of which he learned from Mrs. Conklin that the best time to find Conklin at home would be between midnight and 1:30 A. M. and further, that petitioner would have been able to repossess the car at New City had he arrived there at midnight or thereabouts on the night in question and chanced to find the car on public property. It can perhaps be fairly inferred that the failure of the petitioner to inquire for Conklin at his store in Nanuet was due to a desire to refrain from putting Conklin on his guard and apprising him of the impending seizure of his car. Moreover, an examination of the road map in evidence, discloses that Route 9-W, on which the accident occurred in New Windsor, is an automobile highway that could reasonably be traversed as a direct route to New City.

The office manager of the respondent and the immediate superior of the petitioner testified that petitioner had no regular working hours; that he was given assignments from time to time, including the assignment to repossess Conklin's car several days prior to the accident, and that it was the

custom to grant time off in the future to compensate for any unusually long hours it might be necessary for the petitioner to be employed in the discharge of his assignments. It seems clearly evident that the satisfactory and efficient discharge of petitioner's duties permitted of wide latitude in his movements since he was expected and required to use his sound discretion and judgment in properly fulfilling the special nature of his duties with which he was charged. The testimony of the petitioner that he went to Newburgh to visit his wife there to "kill time," as he termed it, while awaiting another opportunity to contact Conklin and repossess his car, is indicative of the exercise by petitioner of his judgment and discretion as to the time and manner in which he might be able to perform his mission to the best interest of his employer. The field of his employment was not limited by time or material space, but by his ability to cope with and solve the problems incidental to the repossession of an automobile.

The accident occurred in the course of his employment because it occurred while he was on the business of his employer and enroute to the point where he expected and intended to discharge a given assignment. It arose out of the employment because it was the result of a risk that was directly connected with the special nature of his employment.

The test established by the New York Court of Appeals in *Marks Dependents* v. *Gray et al.,* 167 *N. E. Rep.* 181, and cited with approval by our Court of Errors and Appeals in *Pilkington* v. *State Highway Department,* 124 *N. J. L.* 11; 10 *Atl. Rep.* (2d) 489; 125 *N. J. L.* 444; 15 *Atl. Rep.* (2d) 636, in treating this subject, is as follows:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. *Clawson* v. *Pierce Arrow Motor Car Co.,* 231 *N. Y.* 273; 131 *N. E. Rep.* 914.

If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

In applying this further test, I conclude that the petitioner was on the highway by virtue of a duty owing to his employer. Incidentally, and only incidentally, did he go to Newburgh. In this state of facts, I find that the petitioner did sustain an accident arising out of and in the course of his employment.

\*         \*         \*         \*         \*         \*         \*

JOHN M. KERNER,
*Deputy Commissioner.*