In this suit, plaintiff, Beulah Babineaux, widow of Treville Stelly, seeks to recover of the defendants, G. J. Giblin and his insurer, Continental Casualty Company, compensation in the sum of Nineteen 50/100 ($19.50) Dollars per week, beginning from January 4, 1947, for a period of not exceeding three hundred (300) weeks, and for an additional sum of Three Hundred ($300) Dollars for burial expenses arising out of the death of her husband on January 4, 1947, alleged to have occurred in the course and scope of his employment by the defendant, G. J. Giblin. The defendants filed an exception of no cause of action, contending that the death of her husband did not occur in the course and scope of the employment. The exception was sustained and plaintiff's suit was dismissed. The plaintiff has appealed.
The facts, as shown by the petition and which necessarily must be taken as proven, show that prior to and on Saturday, January 4, 1947, the date of the accident and death, plaintiff's husband, Treville Stelly, was in the employ, as a carpenter, of G. J. Giblin, a building contractor, in the construction of a building in the City of New Iberia, Iberia Parish. Decedent was residing in the Town of Abbeville, due to lack of available living quarters in the City of New Iberia; and as part of his employment, he was required to drive to and from his said work in the City of New Iberia, in an automobile owned by him. The shortest, safest and most available route between the place of his employment in New Iberia and his residence in Abbeville was a paved State Highway, which paved highway was traversed by a railroad track a distance of approximately one and 4/10 miles west of the City of New Iberia. In going to his work and returning home from the place of his employment, the decedent was required to traverse said railroad track along the aforesaid highway.
On the day of the accident and death, the decedent had been on duty. His employment *Page 879 
would ordinarily have terminated at 4:30 P.M., and he was paid wages until that time, but in order to enable him to arrive home early, he was permitted by his employer to leave the place of his employment at about the hour of 4:00 P.M. He proceeded to drive to his residence along the aforesaid paved highway. The weather was cold, the sky was overcast and a steady drizzle was falling; as the rain fell, it immediately froze upon the wind shield of his automobile, obstructing his view. Upon his reaching the point where said highway was traversed by the railroad track, and as he drove his automobile upon the railroad track, his automobile was struck by a train and he was killed; the accident occurred at approximately 4:20 P.M.
The plaintiff contends that her petition discloses a cause of action because: (a) That as a part of his employment the decedent was required to use his own automobile in transporting himself to and from the place of his work; (b) that due to lack of available living quarters in New Iberia, decedent was required to live in Abbeville, Louisiana, and in going to and from the place of his employment the decedent was required to traverse the railroad track along which he was killed; (c) that because of his employment on the date of the accident in question, the decedent was exposed to unusual weather conditions which directly caused his death.
In considering these contentions of plaintiff we shall consider them in the above stated order.
The general rule under the Workmen's Compensation Law of this State is that an injury suffered by an employee away from his employer's premises, while going to or returning from work, does not arise out of and in the course of his employment. However, this rule is subject to three exceptions: The first exception is where the employee's duties are such as to require him to furnish his own means of transportation in the actual performance of his work and uses his own means of transportation not only to go back and forth to his work, but also to perform his duties during the course of a day's business. In such instance, the means of transportation is a sort of instrument or tool of trade and the employee travels during the course of one day's work from place to place in the pursuit of his duties. The second exception is where the employer furnishes the means of transportation. The third exception is where the accident occurs near or immediately adjacent to the premises of the employer in the route of ingress or egress used by the employees.
Plaintiff bases her first contention on the fact that decedent, as a part of his employment, was required to furnish his own means of transportation both for himself and for his carpenter tools in going to and from his work in the fulfillment of his contract of employment and was so doing with the knowledge, approval and authorization of his employer and therefore contends that this case falls within the first exception stated and cites cases which she contends support her position.
The first case cited by plaintiff is a New Jersey case, namely: Clegg v. Motor Finance Corporation, 28 A.2d 533, 534, 20 N.J. Misc. 437. In that case the court found the facts to be:
"The petitioner on the day of the accident and for some time prior thereto, was in the employ of the respondents, Interstate Insurance Co., whose office was located in Newark, in the capacity of adjuster. Among other duties, it was necessary for him to effect the repossession of automobiles. He had no regular working hours, but was given assignments each day which he would carry over from day to day. It was not unusual for him to work varying hours of the day or night in the performance of these assignments in which he required the use of his automobile. Several days prior to the alleged accident, he was given an assignment to repossess the automobile of one Conklin who was the manager of a grocery store in Nanuet, N.Y., and who resided in New City, N.Y. On the day of the accident, a Saturday, the petitioner in furtherance of this assignment, attempted to contact Conklin at Nanuet by telephone. Failing in this, he left Newark with his car to go to Nanuet to *Page 880 
repossess the car of Conklin. Arriving in Nanuet in the afternoon, petitioner failed to find Conklin's car in the vicinity of the store and although he made no effort to contact Conklin personally at his store, he tried to reach Conklin by telephone at his home in New City but was unsuccessful. Thereupon, the petitioner left New City in his auto to go to Newburgh, N.Y., where his wife was visiting some friends. The petitioner spent the remainder of the afternoon and early evening visiting with his wife in Newburgh. Petitioner testified that about 11 o'clock that evening, he left Newburgh in his car to go to New City to see Conklin and, if possible, repossess his automobile. It was while on Route 9-W on the outskirts of New Windsor, N.Y. and between 11 P.M. and midnight, that he met with an automobile accident as a result of which he sustained a fractured leg and was hospitalized for several weeks. From the road map in evidence, it would appear that New City is about 5 miles north of Nanuet, that Newburgh is about 30 miles north of New City and that New Windsor is about 3 miles south of Newburgh."
In the opinion, it is stated: "An accident arises 'in the course of' his employment if it occurs while the employee isdoing what a man so employed may reasonably do within a timeduring which he is employed and at a place where he mayreasonably be during that time. For an accident to arise 'out of' the employment, it must be of such a nature the risk ofwhich might have been contemplated by a reasonable person whenentering the employment and as incidental to it. The risk isincidental to the employment when it belonged to or isconnected with what an employee is required to do in theperformance of his services." (Italics ours.) We find this to be the rule in this State. See Kern v. Southport Mill,174 La. 432, 141 So. 19.
Applying the rule to the facts of the case, the court stated: "The field of his employment was not limited by time or material space, but by his ability to cope with and solve the problems incidental to the repossession of an automobile" and held that "the accident occurred in the course of hisemployment because it occurred while he was on the business ofhis employer and en route to the point where he expected andintended to discharge a given assignment. It arose out of theemployment because it was the result of a risk that wasdirectly connected with the special nature of his employment."
(Italics ours.) Under our jurisprudence this case would fall under the first exception to the general rule supra.
The next case cited is the case of Davis v. Bjorenson,229 Iowa 7, 293 N.W. 829, 830, a case decided by the Supreme Court of Iowa. In this case, the claimant was injured by driving from his home to the place of his employment and the Court found that the claimant worked as a mechanic at his employer's place of business and this "duties consisted of inside shop work and outside service calls requiring transportation. These calls were made from the shop in the daytime and from claimant's home at other times upon call by the employer to claimant at his home. Under the employment agreement claimant regularly furnished his automobile to the employer for use in the business as a service car. At night the car was kept at claimant's home where he was subject to emergency service calls requiring its use. During regular working hours the car was kept at the employer's place of business, for use in the business, not only by claimant, but also by the employer and by other employees. Thus the car was an instrumentality of thebusiness at all hours of the day and was subject to that use atnight. It happened that claimant received no orders to make emergency service calls during the night before he was injured.Consequently, it was his duty and this duty was regular anddefinite, to take the automobile to the employer's shop for itsuse in the business, by others as well as claimant. In so doing he was performing for his employer a substantial servicerequired by his employment at the place and in the manner sorequired. In the language of the able trial court, 'Claimant had no selection of his mode of travel to work, that he was required under the terms of his contract to drive his own car from his home to the shop where it was available to his employer for use in the employer's business.' " *Page 881 
(Italics ours.) The court held that the claimant was in the course of his employment when so engaged, and that his injury arose out of his employment. The distinction between this case and the case at bar is very evident.
The plaintiff also cites the case of Ohmen v. Adams Brothers et al., 109 Conn. 378, 146 A. 825, 827, a Connecticut case. In that case plaintiff employee was a carpenter, and it was his custom to be at his place of employment ready for work at 8 o'clock. His wages began at that hour whether he had reached the job or not. He drove his own car to work, which his employers knew and acquiesced in. On the morning he was injured he had gone, with the consent of his employers, to vote, and received his injuries at about 9:20 while on his way from the poll after he had reached the main highway and was proceeding to his work by the shortest route there and by the same highway he would have taken had he gone directly from his home to his place of work. The court held: "From the time he reached the main highway and was proceeding to his place of work he was in the course of his employment. * * * He was going by thedirection of his employers to his work, in a customary conveyance of which they had knowledge, and by a route which was the shortest route to the place of his work, and one which it was reasonable for him to take. He was on the same highway which he would have taken had he gone directly from his home to his place of work. * * * The injury came within the statutory definition, because it happened to the plaintiff while he was engaged in the line of his duty in the business of his employer outside the premises of his employer, but within the hours of his employment and at a place where the employee had a right tobe by the employer's direction. It came within our definition because it took place within the period of the employment, at a place where the employee might reasonably have been, and whilehe was reasonably doing something incidental to it." (Italics ours.)
We are not favored with the statutory definition referred to in the opinion, however we note that in the case of Whitney v. Hazard Lead Works, 105 Conn. 337, 136 A. 105, 106, that, in that State like in our State, an employee is not, as a general rule, entitled to compensation for injuries received upon a public highway while going to and from work and that the rule is subject to four exceptions, one being "Where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer." The Court decided that that case fell within this exception. The only similarity of that case to ours that we can find is that plaintiff in that case was a carpenter and that he was employed by a contractor as in our case.
However, the Ohmen case was later distinguished by the same Connecticut Court in De Rosa et al. v. Levering and Gerrigues Co., 111 Conn. 655, 151 A. 246. In that case, a steel structural iron worker, whose duties required him to work in structural steel erection throughout the New England States, was killed while riding to work from Hartford to New Haven. He lived in Hartford and his work was in New Haven. He had to use his own automobile to go to and from his work because he did not live in the same town wherein he worked. In that case, the Court held that the accident had not occurred while the employee was in the course and scope of his employment. The case was differentiated from the Ohmen case in that in the De Rosa case, the employee did not use his car in connection with the actual duties of his job, using the automobile only to go back and forth to work, while in the Ohmen case the employee used his car to go from place to place as required by the duties of his employer. The De Rosa case, therefore, is more in point to our case than the Ohmen case. In fact, the only difference we find in the facts of the two cases is that in our case the employee was a carpenter while in the De Rosa case the employee was a structural steel worker, a distinction immaterial to the decision of the case.
The plaintiff cites the case of Neyland v. Maryland Casualty Co., La. App., 28 So.2d 351. Without discussing the facts and the holding of our Supreme Court, we do not find wherein this decision is applicable to *Page 882 
the case at bar. The holding of that case comes within the second exception to the general rule. We could cite many other cases so holding.
Likewise, we find that the case of Osborne v. McWilliams Dredging Co., 189 La. 670, 180 So. 481, a case cited by plaintiff, is inapplicable to the determination of the issues herein. That decision falls under the second exception to the rule in that due to the location of work or the duties to be performed by the employee, the employee was required to have means of transportation to and from his home, which means of transportation was furnished by the employer. The employee used, with full permission of his employer, the method of transportation as used by the employer.
In the case at bar, plaintiff was in the employ of the defendant in the capacity of a carpenter, which involved work on and in connection with the construction of a definite building in the City of New Iberia. His employer was not concerned as to how he reached his place of employment. The means of transportation was at the employee's discretion. Decedent had a definite place of employment; it was up to him to be at that definite place and at the hour to begin his duties. Naturally, it was required of him to have his tools with him in order to perform his duties. The employer was not concerned as to where he kept these tools when not in use. The fact that the decedent lived in the City of Abbeville and not in proximity of his work did not and could not concern the employer. It is evident from the petition that it was of no concern to the employer as to how decedent traveled to and from work; in so far as the employer was concerned, the method of conveyance could be by the use of his own car, by the pooling of cars by fellow employees, by bus or other public conveyance. It was the fact that he lived in Abbeville whichrequired him to drive to and from Abbeville to New Iberia and not the nature of his duties. The cases relied upon by the plaintiff are clearly inapposite to plaintiff's case.
With reference to plaintiff's second contention, that is, that the decedent was required to cross the railroad intersection, where his death occurred, as an additional hazard of his employment, the plaintiff cites many cases. We see no useful benefit to discuss or analyze these many cases. They all fall within the classification of cases in which the accident happened in such close proximity to, or so connected with the premises, that, in principle it may be considered as having happened on the actual premises of the employer, and consequently to have arisen in the course of employment. See Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532, and Le Blanc v. Ohio Oil Company, 7 La. App. 721. In the case at bar, the accident happened 1.4 miles from the city limits of New Iberia. The record does not show the distance from the locus of the work where decedent performed his duties. It cannot therefore be said that the accident in this case happened in close proximity to or so connected with the premises, that it may be considered as having happened on the actual premises of the employer. Furthermore, the road traveled by the decedent cannot be said to be the means of ingress and egress of the employer's employees to the premises. Therefore, the cases cited and relied upon by the plaintiff are not in point.
As to plaintiff's contention that this railroad crossing was an additional hazard of his employment, the fact that decedent had to traverse the railroad track was not because his employment required it, but because he was living in Abbeville. For reasons personal to himself, he exposed himself to a hazard which was not inherent to his employment or common to the other employees of the defendant. There is not anything in defendant's business that especially exposed his employees to the risk of being hit by a railroad train.
As to plaintiff's third contention, that is, because of his employment on the date of the accident in question the decedent was exposed to unusual weather conditions which directly contributed to his death, she cites and relies upon the case of Rogers v. Mengel Co., 189 La. 723, 180 So. 499. We do not see wherein this case is applicable. In that case, the Supreme Court decided that plaintiff's petition disclosed, under *Page 883 
the facts alleged, that plaintiff had been injured in the course and scope of his employment. In the same case, La. App., 187 So. 297, we held that it appeared to us, admitting that the plaintiff was in the course and scope of his employment, that the fire which caused the injuries was unnecessary. The prevailing weather condition in the case at bar would only be pertinent if the accident had occurred during the decedent's course and scope of his employment.
Being of the opinion that the alleged accident did not occur during the course and scope of the decedent's employment, the judgment appealed from is affirmed.