# WILLIAM T. KNOWLES, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, et al., Appellants.

(203 N. W. 895.)

**Master and servant — injury received while returning truck to employer held compensable as in course of employment.**

For reasons stated in the opinion it is held that the defendant, an employee of the State Highway Department, was injured in the course of his employment, within the provision of chapter 162, Sess. Laws, 1919, known as Workmen's Compensation Law.

Opinion filed May 4, 1925.

Workmen's Compensation Acts, C. J. § 2 p. 5 n. 11; § 35 p. 41 n. 8: § 39 p. 49 n. 52: § 74 p. 83 n. 50; § 126 p. 121 n. 30; § 127 p. 122 n. 39, 40 New.

Appeal from the District Court of Burleigh County, *Jansonius,* J. Affirmed.

*Scott Cameron,* for appellants.

The mere fact that the claimant in this case might have been using the property or equipment of his employer is not an important factor in determining whether or not he was injured in the course of his employment, the authorities are quite uniform that the mere fact that he was injured while so using the equipment although not in the business of his employer did not involve a liability. Whitefield v. Lambert, 8 B. W. C. C. 91; 12 N. & C. C. A. 905; Whitbread v. Arnold, 1 B. W. C. C. 317; Henson v. Standard Oil Co. 12 N. C. C. A. 379; State v. Hennepin County, 175 N. W. 110.

*F. E. McCurdy,* for respondent.

JOHNSON, J.   Plaintiff filed a claim for compensation with the defendant.   His claim was disallowed and he appealed to the district court of Burleigh county.   The district court found in favor of the plaintiff; the Bureau appeals.   It is stipulated that the only question to be considered is that of liability; and that the matter of the amount of the award, if there be liability, shall be determined by the Bureau.

The facts found are as follows: The plaintiff had been employed by the state highway commission for some time prior to the injury, which took place a few minutes before eight o'clock in the morning, on Monday, October the 23d, 1923. On the preceding Sunday, he obtained permission from one Gettleman, who was in charge of the shops of the commission, to use a light truck belonging to the state, but in the custody of the commission, for his own purposes, to wit, to haul some grain owned by him. He used the truck accordingly, and on Sunday afternoon attempted to return it to the place where it was stored, when not in use, but failed because the warehouse was locked. He thereupon talked with the foreman, under whose direction he worked, and was advised by him to take the truck to his own home, keep it over night and take it the following morning to the shops of the highway commission, or to the warehouse where it had been stored. It appears that it was the intention of the department to use the truck at the shops on Monday morning. Plaintiff thereupon drove the truck to his own home, kept it there over night and the next morning, a few minutes before eight o'clock, in attempting to start it, received the injury for which compensation is claimed. The trial court concluded upon these facts that the injury occurred in the course of plaintiff's employment, and that he was entitled to compensation. The Bureau contends that it was error to hold, under the facts found, that the injury occurred in the course of the employment; that, in fact and in law, he was injured while upon a business of his own, and wholly outside his employment.

Upon the facts found, aside from the finding that the injury occurred in the course of the employment, there is substantially no dispute in the evidence, and, for the purposes of this decision, we shall treat them as established by sufficient proof.

Plaintiff had been in the employ of the highway commission for five or six months before the injury, as a mechanic or an assistant mechanic, truck driver, etc. The hours were from eight in the morning, until five in the afternoon, with intermission for lunch at noon. The truck was used between the shops and the warehouse, and had been, at different times, loaned to employees. While there is some discrepancy between the testimony given by plaintiff and some other witnesses in the district court and at the hearing before the commission as to whether

the plaintiff intended to take the truck back to the warehouse or deliver it at the shops, we think the preponderance of the testimony shows that he had instructions from a superior to deliver the truck at the shops on Monday morning because it was needed or intended to be used for certain specified purposes. Plaintiff testifies specifically to this fact and he is corroborated by two superior officers or employees of the Highway Department who say that he was directed to deliver the truck at the shops. One of these, Hubbard, called by defendant, says plaintiff was to do some work with that truck at the shops on Monday morning—and gives as his conclusion that he was on duty when he cranked the truck. The injury took place at about 7:50 A. M. on Monday when plaintiff was cranking the machine. It seems that this unruly instrumentality was of a make that occasionally develops a perverse propensity to kick and that it did so on this occasion, with the result that plaintiff's arm was severely injured and some bones were broken. The evidence shows that the plaintiff was regularly employed by the highway commission six days a week and eight hours per day.

This is a special proceeding pursuant to the Compensation act; the action is not triable de novo, and the findings of the trial court are presumed to be correct unless clearly opposed to the preponderance of the evidence. Altman v. North Dakota Workmen's Comp. Bureau, 50 N. D. 215, 28 A.L.R. 1337, 195 N. W. 288.

The compensation law is of the compulsory type; it provides that compensation shall be made to employees injured "in the course of the employment." That has reference to the time, place and circumstances of the accident. The preamble of the act states that its purpose is to provide "sure and certain relief" to persons and dependents of persons who are injured in hazardous employment. The act makes claimant's occupation hazardous. See chap. 162, Sess. Laws, 19.

Much stress is laid by the defendant on the fact that the truck had been used by plaintiff on Sunday in connection with his own business; and that, instead of being returned to the warehouse, it remained on plaintiff's premises until Monday morning when the accident occurred.

On first thought the contention seems plausible that the workman was really engaged upon his own business, when, on Monday morning, he attempted to deliver the truck to the shops of the state highway department. On more careful analysis of the situation, however, we

are satisfied that such was not the fact. It may be conceded that it was his duty, as borrower or bailee, to return the truck to the place where he received it; that if, in attempting to do so, the injury had then taken place, he would have been engaged on his own business and not within the course of his employment. He tried to deliver the truck at the warehouse, but found it locked; he then sought instructions from his superiors, who told him to take the truck to his home, and, in the morning, to drive it, not to the warehouse, where it had been delivered to him, but to the shops where some work was to be done with it that very morning and by this workman himself. Unquestionably, plaintiff's employer could have directed him to return the truck to the warehouse where he borrowed it. It did not do so. It waived whatever right and power it had in that regard and told him instead to drive it to the shops where he had to do some work with it early the next morning. Had the truck been in the warehouse, it was a part of his duty, if so ordered, to fetch the truck and deliver it at the shops. Had he been injured in the same manner at the warehouse while attempting to execute such an order from his superior there would have been no question about liability. The injury would have been one in the course of the employment. Had another employee borrowed it on Sunday and had the plaintiff been directed to get the truck at that employee's residence, and deliver it at the shops for use by him on Monday morning, any injury received while carrying out that order would have been in the course of the employment. It is not a case where an employee is injured on the way to or from work; he was actually *at work,* obedient to the orders of the employer, to deliver the truck at the place where work was to be done with it. There is no reason to suppose that he cranked the machine in a different manner than would have been the case had the truck been in the warehouse. It was necessary to crank it in order to start it wherever it was.

When he was cranking the truck on Monday morning, preparatory to delivering it at the shops, he had ceased to be about his own business, he was executing the orders of his master in the ordinary and actual course of his employment, and pursuant to the contract of service. Whatever duty he may have owed as a borrower or bailee to deliver the truck where he received it, had been waived by those who had the power and who were in authority over him; that transaction was wholly in the

past. In the circumstances, regardless of where the truck happened to be, it was the duty of the plaintiff as a servant to bring it to the shops, not because he had borrowed it for his own use the day before, but because he was ordered to do so by his master in connection with the usual course of duty. He was not cranking the car on his own business; it was on the business of his employer. He had fully performed, or attempted to perform, the duty to return the truck the day before. With his efforts in that connection the employer was satisfied. Instead of leaving it at the warehouse, or at some other place designated by the employer, the latter told him to keep it at home, or where he pleased, but ordered him to deliver it at the shops for work the next morning.

The test of liability had the truck been stolen or destroyed by fire during the night, does not necessarily determine whether plaintiff was injured in the course of the employment. It may be conceded that the risk of such a loss was one the plaintiff must bear, and yet it does not follow that he was on his own when he cranked the truck on Monday morning. Different principles are involved. As a borrower he owed no duty to deliver the truck at the shops; as an employee he had no choice but to execute his master's orders. The question of plaintiff's liability as bailee is one of contract, express or implied; whether the relation of master and servant existed Monday morning when the injury took place depends on different principles. The contract of employment was valid and subsisting on Monday morning. We find it impossible to discover any sound principle on which to rest the conclusion that plaintiff was in some way outside that contract notwithstanding he was executing a specific order to which obedience could be exacted only on the theory that, by virtue of an existing labor contract, it was his duty to obey it. It may be admitted that the plaintiff owed his employer the duty to deliver the car on his own time and at his own risk at the warehouse where it was delivered to him; the employer, however, elected to waive the performance of this duty and directed the plaintiff, not as a borrower or bailee of property who owed duties with respect thereto naturally and lawfully arising out of that relation, but as a servant who owed the implicit obedience incident to that status, to begin his services under the labor contract by fetching the truck to the shops where he and it would be put into active service. We think the

evidence supports the conclusion that he obeyed the order as a servant and not merely as a bailee or borrower.

We think the injury originated in the employment, and happened while plaintiff was at work in the service of his master.

Judgment affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURKE, JJ., concur.